IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| GERARDO G. DE GUZMAN, HECTOR T. SEVILLA, CARLITO J. MARQUEZ, BONIFACIO V. SAGANA, EDUARDO M. ELENZANO, JONG HO LEE, MANUEL T. VILAGA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>JANET NAPOLITANO, in her official capacity as Secretary of Homeland Security; DAVID GULICK, in his official capacity as District Director, U.S. Citizenship and Immigration Services; HILDA L. SOLIS, in her official capacity as Secretary of Labor; and TERRENCE TROTTER, in his official capacity as District Director, Department of Labor,<br><br>Defendants. | Civ. Case No: 11-00021<br><br><br><br>**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

## **I. INTRODUCTION**

Gerardo de Guzman, Hector Sevilla, Carlito Marquez, Bonifacio Sagana, Eduardo Elenzano, Jong Ho Lee, and Manuel Vilaga (collectively, "Plaintiffs") bring this putative class action against Janet Napolitano, David Gulick, Hilda Solis, and Terrence Trotter (collectively, "Defendants") in their official capacities, challenging the implementation and enforcement of the Final Rule, a regulation promulgated by the Department of Homeland Security ("DHS") pursuant to the Consolidated Natural Resources Act of 2008.

1

Presently before the Court is Plaintiffs' Motion for Preliminary Injunction to extend the period during which non-resident workers would be eligible for CNMI-only transitional worker ("CW") status until the Court has issued a final ruling on the legality of the Final Rule. After considering the relevant filings, the oral arguments presented by counsel for the parties on November 29, 2011, and the record in this case, the Court finds that the Plaintiffs have not established their entitlement to a preliminary injunction.

## **II. BACKGROUND**

### A.  FACTUAL SUMMARY

For thirty years, since 1978, the Commonwealth of the Northern Mariana Islands ("CNMI" or "Commonwealth") had full control over its borders and immigration policies. This changed when President George W. Bush signed into law the Consolidated Natural Resources Act of 2008 ("CNRA"), Pub. L. 110-229, 122 Stat. 754, 853 (2008), codified at 48 U.S.C. § 1806 *et seq*. The CNRA is a federal law that provides for the eventual full application of U.S. immigration laws to the Commonwealth. The CNRA created "a transition period beginning on the transition program effective date and ending on December 31, 2014, except as provided in subsections (b) and (d), during which the Secretary of Homeland Security, in consultation with the Secretary of State, the Attorney General, the Secretary of Labor, and the Secretary of the Interior, shall establish, administer, and enforce a transition program to regulate immigration to the Commonwealth . . ." 48 U.S.C. § 1806(a)(2). If the Secretary of Labor determines that an extension of the transition period is necessary to ensure an adequate number of workers in the Commonwealth, she may extend the transition period up to five years. 48 U.S.C. § 1806(d)(5).

Under the CNRA, the initial transition period effective date was June 1, 2009. 48 U.S.C. § 1806(a)(1). The Secretary of Homeland Security subsequently exercised discretion pursuant to § 1806(a)(3)(A) and delayed the effective date until November 28, 2009. *See* CNMI Transitional Worker Classification, 76 Fed. Reg. 55,502 (Sept. 7, 2011). The CNRA provided for a grace period of up to two years. 48 U.S.C. § 1806(e)(1)(A). During the grace period, no alien lawfully present in the Commonwealth on the effective date would be removable until two years after the effective date or when their legal status expires, whichever is earlier. (*Id.*) During the last weeks of immigration control by the CNMI government in 2009, the CNMI Department of Labor issued two-year conditional permits, commonly referred to as "umbrella permits," to many people holding CNMI non-resident worker permits. The umbrella permits allowed alien workers to stay and work in the CNMI until November 27, 2011, the last day of the grace period.

On October 27, 2009, DHS published an Interim Final Rule ("Interim Rule") to create a new CNMI-only transitional worker classification ("CW program") intended to be effective for the duration of the transition period. 8 C.F.R. § 214.2(w) (2011); *see also* 76 Fed. Reg. 55,502. On November 25, 2009, upon suit by the Commonwealth, the U.S. District Court for the District of Columbia temporarily enjoined implementation of the Interim Rule. *CNMI v. United States*, 686 F. Supp. 2d 7 (D.D.C. 2009). In granting the preliminary injunction, the court found that the Commonwealth ultimately was likely to succeed on the merits because in promulgating the Interim Rule, DHS had inexcusably dispensed with the notice-and-comment period required by the Administrative Procedure Act ("APA"). *Id.* at 15. The court also found that there would be irreparable harm because if it decided the merits of the plaintiff's APA claim in the Commonwealth's favor, the damage done by DHS's violation of the APA could not be fully cured

by remedial action and the CNMI would never have an equivalent opportunity to influence the rule's contents. *Id.* at 18–19. As to the balance of harms, the court opined that most alien workers benefiting from the Interim Rule would not be negatively affected by a temporary delay in its implementation because they would not be removable during the CNRA's two-year grace period. *Id.* at 20. The court also observed that any difficulties an injunction would pose for some alien workers could be ameliorated by DHS's "promulgat[ing] a narrowly focused and temporary emergency regulation that addresses only the problem at hand." *Id.* Finally, the court found that not only is the public interest generally served when administrative agencies comply with their obligations under the APA; but also, given the special contractual relationship between the CNMI and the United States, it is essential to ensure that the CNMI participates actively in the process of making rules that have the potential to transform the nature of its workforce. *Id.* 21–22.

In response to the preliminary injunction, DHS published a notice in the Federal Register reopening and extending the public comment period on the Interim Rule for an additional thirty days. 76 Fed. Reg. 55,503. The reopened comment period ended on January 8, 2010. *Id.* A total of 146 comments were received and their contents were summarized and addressed when DHS published the Final Rule in the Federal Register on September 7, 2011. 76 Fed. Reg. 55,502 *et seq*. The Final Rule adopted most of the changes set forth in the Interim Rule, including the rationale for promulgating the rule. *Id.* The Final Rule established the CW program to allow workers who would not be eligible for any other lawful status under the Immigration and Nationality Act ("INA") to enter or remain in the CNMI as transitional workers during the transition period. The Department of Homeland Security set the effective date of the Final Rule for thirty days later, on October 7, 2011.

/ /

## B. THE COMPLAINT

On October 20, 2011, seven named Plaintiffs filed *pro se* a "Complaint for Decla[ra]tory and Injuncti[ve] Relief" (hereafter, "Complaint," Docket No. 1). Plaintiffs include five foreign workers and two employers. (Compl. ¶¶ 8, 14–21.) Of the employers, one is a U.S. permanent resident and the other is a U.S. citizen. (*Id.*) Of the five foreign workers, at least four have U.S. citizen children. (*Id.* ¶¶ 14–21.) Plaintiffs broadly challenge the federal government's "assertion of general authority to enforce, implement and execute the CNMI-only Transitional Worker Final Rule ("Final Rule") to the foreign worker population in the CNMI." (*Id.* ¶ 1.) Plaintiffs seek certification as a class[1] and a declaration that implementation of the Final Rule would be unlawful and would exceed Defendants' constitutional and statutory authority. (*Id.* at 12.) Plaintiffs further ask for declaratory judgment that the Final Rule would violate their constitutional rights. (*Id.*) Plaintiffs expressly seek to permanently enjoin implementation of the Final Rule. (*Id.*) On October 27, 2011, the Court issued an order construing the Complaint to include a petition for a preliminary injunction and ordered the parties to file briefs on that issue. (Docket No. 2.) Plaintiffs subsequently secured counsel to represent them.

## C. PROCEDURAL SUMMARY

On November 16, 2011, Plaintiffs filed their Motion for a Preliminary Injunction (hereafter, "Motion," Docket No. 20). Along with their Motion, Plaintiffs filed a Motion for Leave to File Plaintiffs' Brief and Exhibits Out of Time. (Docket No. 19.) The Court now GRANTS that motion.

---

[1] The Court declines to address the issue of class certification at this stage of the proceedings.

On November 21, 2011, Defendants filed their Opposition to Plaintiffs' Motion for Preliminary Injunction (hereafter, "Opposition," Docket No. 32). No reply brief was filed. The matter came before the Court for oral argument on November 29, 2011.

### III. STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008). In determining whether to grant a preliminary injunction, the district court applies a four-pronged test. The plaintiff must establish that (1) plaintiff is likely to succeed on the merits, (2) plaintiff is likely to suffer irreparable harm in the absence of a preliminary injunction, (3) the balance of equities tips in plaintiff's favor, and (4) a preliminary injunction is in the public interest. *Winter,* 555 U.S. at 19. Alternatively, if the party can satisfy the second and fourth prongs, the district court may issue a preliminary injunction if "serious questions going to the merits" have been raised and "the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–1135 (9th Cir. 2011) (*quoting Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)).

### IV. DISCUSSION

A. **L**IKELIHOOD OF **S**UCCESS ON THE **M**ERITS

Plaintiffs argue that the Final Rule is both procedurally and substantively defective. (Motion at 6.) They maintain that the twenty-two month delay in promulgating the rule from the date of its initial publication in the Federal Register is *per se* unreasonable. (Motion at 7.) They also contend that the Final Rule fails to conform substantively to the statutory text and intent of Congress. (Motion at 8.) The Court addresses each of Plaintiffs' contentions in turn.

### 1. Procedural Defects

Plaintiffs first assert that DHS's twenty-two-month delay from the time the Interim Rule was reopened for comment until the promulgation of the Final Rule was *per se* unreasonable because it gave alien workers and their employers only fifty-one days after its effective date to apply for the CW program. (Motion at 7.)

#### a. *Rule-making Requirements under Section 553 of the APA*

The APA requires a three-step process for rule making. First, a proposed rule must be published in the Federal Register. 5 U.S.C. § 553(b). Second, thirty days must be provided for public comment. 5 U.S.C. § 553(c). Third, notice of a final rule must be given by publication in the Federal Register not less than thirty days before the rule's effective date. 5 U.S.C. § 553(d). While a rule's effective date is not unassailable simply because it complies with section 553(d), an effective date is reasonable where it allows adequate time for those affected to take appropriate action. *See National Assoc. of Independent Television Producer & Distributors v. FCC*, 502 F.2d 249 (2d Cir. 1974).

In this case, there is no dispute that DHS complied with steps one and two. With respect to the third step, the Final Rule was promulgated on September 7, 2011. Its effective date was thirty days later, on October 7, 2011. Thus, DHS's implementation of the Final Rule was in compliance with section 553 of the APA.

Plaintiffs challenge the reasonableness of the Final Rule's effective date. They contend that the twenty-two month delay in the rule's promulgation left employers with only fifty-one days to apply for CW permits before the expiration of the two-year grace period. The fifty-one days, Plaintiffs complain, is not enough time for employers to consider their options and take appropriate

7

action. In order to apply for CW status for a foreign employee, an employer must attest that qualified U.S. workers are not available to fill the position, must post a job announcement, and must review other U.S. applicants.

Plaintiffs' contentions fail. First, affected persons had at least eighty-one days prior to the expiration of the two-year grace period to plan for complying with the Final Rule because of the thirty-day notice requirement. The two named employer Plaintiffs themselves were able to file the appropriate CW petitions by the deadline of November 27, the expiration of the two-year grace period. Second, DHS published the Interim Rule for a notice-and-comment period in October of 2009. The Final Rule as promulgated in 2011 included few changes, most of which were meant to address the concerns expressed in the comments during the open period and to benefit employers and foreign employees in the CNMI. The major components of the Final Rule remained the same as those of the Interim Rule. The public, therefore, realistically had nearly two years of notice to plan and prepare for the implementation of the Final Rule. This long notice-and-comment period provided adequate time for employers to familiarize themselves with the proposed rule. The publication of the Final Rule, which adopted most of the same terms as the Interim Rule, provided adequate notice to employers to take action to retain their foreign employees through the CW application process.

### b. *Unreasonable Delay under Section 706 of the APA*

An agency may not unreasonably delay in performing discrete, ministerial, nondiscretionary duties it is required to perform. 5 U.S.C. § 706(1). The limitation on discrete agency action precludes broad programmatic attacks—that is, plaintiffs must direct their attack against some

particular agency action that causes them harm. *See Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 62 (2004) (*citing Lujan v. National Wildlife Federation,* 497 U.S. 871, 907 (1990)).

When "the statute authorizing agency action fails to specify a timetable for effectiveness of decisions, the agency normally retains considerable discretion to choose an effective date." *Recording Industry Ass'n of America v. Copyright Royalty Tribunal,* 662 F.2d 1, 14 (D.C. 1981). Furthermore, when an agency is compelled by law to act within a certain time period, but the manner of action is left to the agency's discretion, a court may compel the agency to act, but it has no power to specify what the action must be. *Norton,* 542 U.S. at 62.

Here, DHS's creation of the Final Rule did not constitute a ministerial or nondiscretionary duty. Congress explicitly authorized and directed DHS to promulgate rules to carry out its intent under the CNRA, but it did not set deadlines for issuing transition permits. Without a specific timetable for effectiveness, DHS retains significant discretion to draft and set effective dates for its regulatory schemes. Moreover, the CNRA required DHS to consult with four other federal government departments in order to implement the transition program. 48 U.S.C. § 1806(a)(2) ("the Secretary of Homeland Security, in consultation with the Secretary of State, Attorney General, the Secretary of Labor, and the Secretary of the Interior, shall establish, administer, and enforce a transition program to regulate immigration to the Commonwealth"). Even if DHS was mandated under the CNRA to act within a certain time period, the court can only compel it to act. *Norton,* 542 U.S. at 62. DHS has already acted by implementing the Final Rule in compliance with the APA and has not caused unreasonable delay in its implementation. Thus, DHS's timeline for the implementation of the Final Rule was not inconsistent with the enabling statute.

/ /

**2. Substantive Defects**

Plaintiffs argue that the Final Rule does not conform to the statutory text and intent of Congress. (Motion at 8.)

Where Congress has explicitly authorized an agency to promulgate regulations relating to a specific statute, "[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984); *United States v. Mead Corp.*, 533 U.S. 227 (2001). In reviewing an agency regulation under an "arbitrary or capricious" challenge, a judge is to "adhere to a narrow scope of review, wherein [she] is not to substitute her judgment for that of an agency." *Providence Yakima Medical Center v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010).

### a. Minimizing Adverse Effects

The Final Rule was promulgated according to the mandate from Congress that DHS establish a transitional worker classification on terms set by DHS. Congress intended that the transition occur in a way that "minimizes[s], to the greatest extent practicable, potential adverse economic and fiscal effects" of the transition. Plaintiffs argue that the time provided for application of the CW permits was inadequate to minimize the potential for adverse economic and fiscal effects.

However, DHS has taken steps to mitigate adverse effects and burdens caused by the Final Rule. Specifically, the Final Rule provides for an initial grant of CW-1 transitional worker status or CW-2 dependent status in the CNMI without having to travel abroad to obtain a nonimmigrant visa, for need-based waivers of the filing fee for dependent family members seeking CW-2 status in the CNMI, and for a limited travel exception to the bar on travel by aliens with CW status. 76 Fed. Reg. 55,506.

As stated above, the Court finds that Plaintiffs were provided with ample time to plan and prepare for the implementation of the Final Rule. The CNRA's grace period, in conjunction with the umbrella permits, afforded employers at least two years to adjust to the new federal requirements.

### *b. Unresolved Claims before the CNMI Department of Labor*

Plaintiffs argue that DHS has not implemented an orderly transition because (1) the CNMI Department of Labor has asserted authority over labor issues in the Commonwealth and (2) a number of guest workers with umbrella permits have unresolved wage and other claims against employers pending with the CNMI Department of Labor. Plaintiffs aver that these grievances could be addressed if Plaintiffs were, as they request, given more time under which they are considered lawfully present in the Commonwealth.

However, Plaintiffs fail to show that there is a connection between their grievances and the Final Rule. Moreover, none of the Plaintiffs represented that they have unresolved wage or labor claims against their employers. Should any non-resident worker with unresolved claims against his or her employer face removal proceedings under the Final Rule, the issue would properly be presented in immigration court.

### *c. Protecting Workers*

Plaintiffs allege that the Final Rule fails to satisfy Congress's command that aliens holding CNMI-only nonimmigrant transitional worker status "be permitted to transfer between employers in the Commonwealth during the period of such alien's authorized stay therein," under 48 U.S.C. § 1806. (Motion at 7.) To the contrary, the Final Rule fully implements the CNRA's requirement to

allow transfer between employers. It specifically permits a CW employee to transfer to another employer if the new employer files a CW petition. 8 C.F.R. § 214.2(w)(7)(iii).

Plaintiffs further argue that the employer-based transitional worker classification system conflicts with the CNRA's stated goal of protecting against the exploitation of workers. (Motion at 7–8.) However, DHS has set forth the many ways the Final Rule protects against worker exploitation. First, the Final Rule's classification system ensures that any employer of a CW worker is a "legitimate business"[2] and attests to the employer's compliance with federal and CNMI labor law. A business shall not be considered legitimate if it engages directly or indirectly in prostitution, trafficking of minors, or any other activity that is illegal under federal or local law. 8 C.F.R. § 214.2(w)(1)(vi). Certain occupational categories, including those excluded by the legitimate-business requirement, have been found to be prone to widespread abuse. 76 Fed. Reg. 55,502, 55,508. The legitimate-business requirement is thus consistent with the CNRA's stated purpose of protecting workers from potential exploitation and abuse. Second, section 214.2(2)(7)(iii) provides that a CW worker may start to work for a new employer as soon as that employer files a petition pending its adjudication. There is no requirement that the existing employer consent to the transfer, thereby avoiding the possibility of the employee being withheld against her will. Third, the Final Rule provides that CW workers may apply to change their nonimmigrant status to any other status under the INA once they are eligible. These provisions give workers greater opportunities to move from one employer to another, reducing the chances of exploitation and abuse. Accordingly, the Final Rule complies with the CNRA's stated goal of protecting workers against exploitation.

---

[2] "*Legitimate business* means a real, active, and operating commercial or entrepreneurial undertaking which produces services or goods for profit, or is a governmental, charitable or other validly recognized nonprofit entity. The business must meet applicable legal requirements for doing business in the CNMI. . . . The Secretary [of DHS] will determine whether a business is legitimate." 8 C.F.R. § 214.2(w)(1)(vi).

Based on the foregoing, the Court finds that Plaintiffs have not met their burden of establishing that they are likely to succeed on the merits of their claims.

## B. IRREPARABLE HARM

Plaintiffs assert that they and others similarly situated have already suffered irreparable harm because they had only fifty-one days to apply for the CW permits and failure to apply will result in loss of status as of November 28, 2011. (Motion at 8.) Plaintiffs contend that if nothing is done by November 27, 2011, many foreign workers and their families will have to choose between voluntarily leaving the Commonwealth or being forced into removal proceedings. (Motion at 8.) They further claim that businesses will be disrupted by the loss of access to an adequate workforce and customers. (*Id*.)

The law "requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011). In addition to showing that irreparable injury is likely, Plaintiffs must also demonstrate a causal connection between the alleged irreparable harm and the action the moving party seeks to enjoin. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011). Plaintiffs therefore must show that the Final Rule is the cause of the alleged harm.

Here, while the two employer Plaintiffs claim that business could be badly hurt, they provide no explanation or proof of harm to their businesses. They have not established that there is a barrier to employers' ability to obtain the CW status for their workers. In fact, over 170 different employers have submitted 680 CW petitions on behalf of more than 1,150 foreign worker beneficiaries.[3]

---

[3] Declaration of Corinna Luna in support of Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction. (Docket No. 32, Attachment No. 1.) Corinna Luna is the Branch Chief of the Business and Employment Services

Employer Plaintiffs Vilaga and Lee have admitted that they were able to apply for CW petitions by the November 27 deadline.

Furthermore, Plaintiffs have not shown that any harm they may suffer is a result of the Final Rule itself rather than the expiration of the umbrella permits sanctioned by the statutory CNRA. The purpose of the Final Rule is to extend foreign-worker status beyond the November 27 deadline to the end of the transition period in December 2014. Plaintiffs are essentially asking for an extension of the November 27, 2011, expiration date so that more workers can benefit from the Final Rule. However, the expiration of the umbrella permits on November 27, 2011, is a function of the CNRA, which is not challenged in this action. Even if the Final Rule were enjoined, it would have no effect on the expiration date and thus would not help Plaintiffs. Non-residents whose status is tied to umbrella permits will fall out of status regardless on November 27.[4] Accordingly, Plaintiffs have not shown that they will likely suffer irreparable harm that is caused by the Final Rule.

## C. BALANCE OF HARDSHIPS

The court must balance the harm to defendants or other interested parties from granting the injunction against the harm to plaintiffs from not doing so. *Winter*, 555 U.S. at 19. Plaintiffs argue that Defendants would not suffer any harm from a six-month delay in implementation, as evidenced by the nearly two-year delay in promulgating the Final Rule (on September 7, 2011) from the date of

---

Branch for the Service Center Operations Directorate, United States Citizenship and Immigration Services ("USCIS"). (*Id.*)

[4] DHS can, if necessary, promulgate narrowly focused and temporary emergency regulations to address the problem at hand. To this end, on November 24, 2011, DHS published a new policy regarding parole for four groups of foreign workers up to December 2012. The policy was promulgated for humanitarian purposes. At least four out of the seven named Plaintiffs claim that they have U.S. citizen children, which makes them eligible for parole under this new policy. Those Plaintiffs have a hard time proving that they will suffer irreparable harm if the injunction is not granted.

14

the Interim Rule. (Motion at 9.) Plaintiffs contend that, on the other hand, they are under great pressure to make decisions and expend scarce economic resources. (*Id.*) They argue also that thousands of aliens will face abrupt loss of immigration status with no reasonable and realistic means of obtaining a new status. (*Id.*)

Plaintiffs are asking for an extension of their status expiration date for six months. This would allow them more time to apply for the CW status or some other status under the INA without the fear of falling out of status and being ineligible for either benefit. However, it is unclear whether an injunction would help non-resident employees at this point. Employers have had at least fifty-one days to apply for CW petitions for the employees they wish to hire or retain. The fact that some foreign employees are still without status may simply be a reflection of the current poor economic conditions that make CNMI employers reluctant to bear the cost of carrying foreign workers under the new law.

On the other hand, a six-month delay in the implementation of the Final Rule would prevent DHS from moving forward with the transition toward full implementation of federal immigration law as mandated by Congress. This delay may also adversely affect those foreign workers who have already secured their CW status and would potentially be able to seek an improved status by the 2014 deadline to fully implement federal immigration law in the CNMI.

Based on the foregoing, the Court finds that the balance of hardships does not tip in Plaintiffs' favor. Plaintiffs have had sufficient time to prepare for the implementation of the Final Rule. Even if the balance of hardships did tip in Plaintiffs' favor, it would not be enough for a preliminary injunction because the Court finds that Plaintiffs are not likely to succeed on the merits of their claim.

**D. PUBLIC INTEREST**

Finally, Plaintiffs argue that the public interest would be served by a temporary injunction because only then could the clearly articulated objective of Congress in enacting Title VII of the CNRA have any prospect of being achieved and the harms Congress sought to circumvent be avoided. (Motion at 9.) Defendants counter only that an injunction would inject great uncertainty into the status of guest workers and the state of the CNMI economy, and thus would not serve the public interest. (Opp. at 37.)

The Court finds that the public interest would not be served by extending the eligibility for CW status petitions for six months. First, the alien workers who do not have an identified employer willing and able to petition for them now will not necessarily have one in six months. Second, if and when any Commonwealth employer in fact needs and wants to petition for an alien worker, that employer may still do so under the Final Rule. Whether or not any of the worker Plaintiffs will be chosen by the employer is not for the Court to decide.

### V. CONCLUSION

Notwithstanding the balance of harms or how much the public interest would be served, given the unlikelihood that Plaintiffs will succeed on the merits of their claim and the lack of irreparable harm due to the implementation of the Final Rule, the Court concludes that Plaintiffs have not established their entitlement to a preliminary injunction.

For the foregoing reasons, the petition for a preliminary injunction is DENIED.

**SO ORDERED** on December 30, 2011.

_____
RAMONA V. MANGLONA, Chief Judge